UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE CHARLES G. WILLIAMS III    )        2:10-mc-00202-JAW

## ORDER ON PETITION FOR REINSTATEMENT

The Court denies the petition of Charles G. Williams, III for reinstatement to the bar of this Court and overrules his objections to this Court's proceedings.

## I.    STATEMENT OF FACTS

### A.    Procedural History

On September 3, 2010, Charles G. Williams filed a verified petition for attorney reinstatement to the bar of this Court pursuant to Local Rule 83.3(g). *Verified Pet. for Att'y Reinstatement Pursuant to U.S.D.C. Loc. R. 83.3(g)* (Docket # 1) (*Pet.*).  On September 7, 2010, the Court ordered Mr. Williams to show cause as to why the petition should not be denied since he had failed to demonstrate that he is a member of the bar of the state of Maine, which is a prerequisite for admission or readmission to the bar of this District.  *Order to Show Cause* (Docket # 2).  The Maine Board of Overseers of the Bar responded to Mr. Williams' petition on September 14, 2010, saying that Mr. Williams' petition "is inappropriate and untimely" since Mr. Williams' petition for reinstatement to the Maine bar had been denied by the Maine Supreme Judicial Court on May 10, 2010, and Mr. Williams' appeal of that order was pending before the Maine Law Court.  *Resp. to Verified Pet. for Att'y Reinstatement* (Docket # 3).  On September 21, 2010, Mr. Williams responded.  *Pet.'s Consolidated Resp. to Show Cause Order and* Sua Sponte *Mot. for*

*Summ. J.* (Docket # 4) (*Pet.'s Resp.*). Among other arguments, citing *Selling v. Radford*, 243 U.S. 46 (1917), Mr. Williams claimed that the Maine Supreme Judicial Court's resolution of his petition for reinstatement is not binding on this Court because the State proceeding denied him due process. *Id.* at 7–8. Upon his motion, the Court granted Mr. Williams a stay in his petition for reinstatement until the Maine Supreme Judicial Court ruled on his pending appeal of the single justice's Order denying his state petition for reinstatement to the Maine state bar. *Pet.'s 1st* Ex Parte *Mot. to Continue* Sua Sponte *Summ. J. Consideration (Fed. R. Civ. P. 56(f)(2))* (Docket # 5); *Order on Pet.'s Mot. to Stay* (Docket # 6).

On December 10, 2010, Mr. Williams filed a copy of the Maine Supreme Judicial Court Order dated November 23, 2010, affirming the decision of the single justice, and he requested a status conference with the Court. *Letter from Charles Williams to Clerk of Ct.* (Dec. 5, 2010) (Docket # 7) Attach. 1, *Pet. of Charles G. Williams III for Reinstatement to the Bar of the State of Maine*, 2010 ME 121 (Nov. 23, 2010) (*Law Court Order*). On December 14, 2010, the Court denied Mr. Williams' request for a status conference and ordered him to file a memorandum no later than January 18, 2011, addressing at a minimum a series of issues. *Briefing Order* (Docket # 8). After receiving an extension, Mr. Williams filed his response on January 19, 2011. *Pet.'s Mot. for Enlargement of Time* (Docket # 10); *Order* (Docket # 12); *Pet.'s 2nd Resp. to Show Cause Order and Reasons Why Reinstatement Should Occur* (Docket # 11) (*Pet.'s 2nd Resp.*). The Board of Overseers of the Bar responded

on February 18, 2011. *Bd. of Overseers of the Bar's Resp. Opposing Reinstatement* (Docket # 13) (*Bd. Opp'n*).

On February 22, 2011, after noticing that the record might be incomplete, the Court ordered Mr. Williams to file a complete record of the state disciplinary proceeding and to identify those parts of the record upon which is he relying. *Order to File Record* (Docket # 14). On February 23, 2011, Mr. Williams filed a reply memorandum. *Pet.'s Reply Mem. of Points and Authorities in Support of Reinstatement* (Docket # 17) (*Pet.'s Reply*). On March 1, 2011, the Court issued an Order of Clarification to resolve Mr. Williams' confusion about what the Order to File Record required. *Order of Clarification* (Docket # 19). On March 8, 2011, Mr. Williams filed a set of objections and an offer of proof. *Pet.'s Notice of Objections and Offer of Proof to the District Ct.'s Order of Clarification* (Docket # 21) (*Pet.'s Ob.*). As Mr. Williams was attempting to manufacture a dispute about the record with the Clerk of the Maine Supreme Judicial Court, the Court intervened, denying his request for a subpoena *duces tecum*. *Order on Pending Proceeding* (Docket # 24). The record closed on the pending petition for reinstatement on March 21, 2011. *Id.* at 4. On March 24, 2011, after the record closed, Mr. Williams filed a third response. *Pet.'s 3rd Resp. to Show Cause Order* (Docket # 26) (*Pet.'s 3rd Resp.*).[1]

## B. Charles G. Williams III, the Maine Bar, and the Maine District Court

Charles G. Williams graduated from law school in 1998 and was admitted to the practice of law in the state of Maine in April 1999. *Pet.'s Resp.* Attach. 10 at 3

---

[1] Despite the fact Mr. Williams' third response was late and he filed no motion for late filing, the Court will consider it.

(*Alexander Order*). On April 16, 2002, Associate Justice Paul L. Rudman issued an order temporarily suspending Charles G. Williams III from the practice of law in the state of Maine. *Id.* at 4. The Order was filed in this Court on April 17, 2002, and on April 18, 2002, Judge Hornby issued an Order to Show Cause as to why this Court should not impose identical discipline. *Order to Show Cause* at 1, *Bd. of Overseers of the Bar v. Williams*, No. 2:02-mc-42-GZS (D. Me. Apr. 18, 2002). On May 10, 2002, Judge Hornby issued an order of suspension. *Order of Suspension*, *Bd. of Overseers of the Bar v. Williams*, No. 2:02-mc-42-GZS (D. Me. May 10, 2002) (Docket # 5).[2]

On April 15, 2004, an Order of Disbarment was filed with this Court effective April 7, 2004. *Order of Disbarment, Bd. of Overseers of the Bar*, No. 2:02-mc-42-GZS (D. Me. Apr. 15, 2004) (Docket # 28). On April 26, 2004, this Court issued an Order to Show Cause as to why the identical discipline by this Court would be unwarranted. *Order to Show Cause, Bd. of Overseers of the Bar*, No. 2:02-mc-42-GZS (D. Me. Apr. 26, 2004) (Docket # 29). On June 29, 2004, Chief Judge George Z. Singal issued an Order of Disbarment. *Order of Disbarment, Bd. of Overseers of the Bar*, No. 2:02-mc-42-GZS (D. Me. June 29, 2004) (Docket # 35). On March 7, 2005, the First Circuit dismissed Mr. Williams' appeal of that Order. *Mandate of USCA, Bd. of Overseers of the Bar*, No. 2:02-mc-42-GZS (D. Me. March 7, 2004) (Docket # 39).

---

[2] Following this suspension, Mr. Williams filed a number of motions and petitions with this Court and with the Court of Appeals for the First Circuit. *See Bd. of Overseers of the Bar v. Williams*, No. 2:02-mc-42-GZS (Docket #s 6, 10, 15, 16, 20, 25, 26, 30, 36–39).

On September 30, 2009, Mr. Williams sought reinstatement in the Maine State bar. *Alexander Order* at 1. His petition was referred for hearing to a Grievance Panel of the Board of Overseers of the Bar, which held a hearing on November 19, 2009. *Id.* Mr. Williams was allowed to appear and testify by telephone from Georgia, where he was residing at the time. *Id.* at 1–2. On November 25, 2009, the Grievance Panel issued a report recommending the denial of Mr. Williams' petition for reinstatement. *Id.* at 2. On January 27, 2010, the Board of Overseers of the Bar voted to support the Grievance Panel recommendation and to recommend to the Maine Supreme Judicial Court that Mr. Williams' petition be denied. *Id.*

On May 10, 2010, Justice Donald G. Alexander, acting as a single justice, denied the petition for reinstatement in a twenty-six page Order. *Id.* at 26. He concluded that Mr. Williams had "failed to prove, by clear and convincing evidence, that his reinstatement will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest." *Id.* Mr. Williams appealed Justice Alexander's Order and on November 23, 2010, the Maine Supreme Judicial Court affirmed the judgment. *Law Court Order* at 1.

C. **Charles G. Williams III's Contentions**

In his multiple filings in the pending petition for reinstatement, Mr. Williams makes the following claims:

1) That the state decision constitutes disparate treatment in violation of Mr. Williams' rights to equal protection as a "class of one" under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000);

2) that the Rules of Civil Procedure, specifically Rule 56, are applicable to his reinstatement petition;

3) that Maine Bar Rule 7.3(j)(6) is unconstitutional on its face;

4) that Maine Bar Rule 7.3(j)(6) is unconstitutional as applied by the Law Court;

5) that the Maine Supreme Judicial Court stigmatized him in violation of his procedural due process rights under *Paul v. Davis*, 424 U.S. 694 (1976);

6) that the Maine Supreme Judicial Court determined the underlying facts within the state reinstatement petition in an arbitrary and capricious manner,

7) that Mr. Williams asserts a grave reason that the findings of the state court should not be considered by the federal court;

8) that the retroactive application of the Law Court's "professional misconduct" violated his due process rights to "notice" under *Brinkerhoff-Faris Trust & Savings Co. v. Hill,* 281 U.S. 673 (1930); and,

9) that he satisfies all the objective elements of Maine Bar Rule 7.3(j)(5).

*Pet.*; *Pet.'s Resp.*; *Pet.'s 2nd Resp.*; *Pet.'s Reply*; *Pet.'s Ob.*; *Pet.'s 3rd Resp.*[3]

Regarding Mr. Williams' objections and offer of proof, Mr. Williams' first objection relates to the controversy he attempted to generate with the Clerk of the

---

[3] The Court pieced together these issues from Mr. Williams' multiple filings.

Maine Supreme Judicial Court over the physical location of the appellate briefs in his case. *Pet.'s Ob.* at 4–12. Mr. Williams' second objection concerns the Court's Order of Clarification. *Id.* at 12–15. Mr. Williams' final objection asserts that the Court is violating its own local rules. *Id.* at 15–17.

### D. The Board of Overseers of the Bar's Response

The Board of Overseers of the Bar contends that because Mr. Williams has not been reinstated to the bar of the state of Maine, his pending petition for reinstatement must be denied. *Bd. Opp'n* at 1–2. The Board goes on to say that if the Court addresses Mr. Williams' argument under *Selling v. Radford*, the Court should deny the petition for reinstatement because Mr. Williams has not demonstrated that the state of Maine failed to comply with due process requirements in rejecting his state petition for reinstatement. *Id.* at 3–9.

## II. DISCUSSION

### A. The Record

The record in this petition for reinstatement consists of the following:

1) Transcript of Board of Overseers hearing dated November 19, 2009, *Pet.* Attach. 1;

2) Personal Statement of Charles G. Williams, III, *id.* Attach. 2;

3) Petitioner's Consolidated opposing Statement of Material Facts in Opposition to Show Cause Order and Statement of Additional Material Facts Pursuant to Loc. R. 56(c) and (d), *Pet.'s Resp.* Attach. 1;

4) Supplemental Document in Opposition to Show Cause Order, *id.* Attach. 2;

5) Documents and Supporting Materials in Support of Declaration of Charles G. Williams III in Response to Show Cause Order and Motion for Summary Judgment, *id.* Attach. 3;

6) Docket Sheet of Reinstatement Petition, *id.* Attach. 4;

7) Order of Justice Donald G. Alexander of February 8, 2010, *id.* Attach. 5;

8) Petitioner's Brief in Support of Reinstatement, *id.* Attach. 6;

9) Board of Overseers of the Bar's Brief in Opposition to Reinstatement, *id.* Attach. 7;

10) Petitioner's Reply Memorandum in Support of Reinstatement, *id.* Attach. 8;

11) Report of Panel B on Petition for Reinstatement, *id.* Attach. 9 (*Panel B Report*);

12) Order of Justice Donald G. Alexander dated May 10, 2010, *Alexander Order*;

13) Petitioner's Motion for Status Conference and Request for Production for the Production of the Administrative Record Pursuant to Me. Bar R. 7.3(j)(5 and 6) and Me. R. App. P. 10(c), *Pet.'s Resp.* Attach. 11;

14) Notice of Docketing in the Law Court, *id.* Attach. 12;

15) Law Court Briefing Schedule, *id.* Attach. 13;

16) Decision of the Maine Supreme Judicial Court regarding the Petition of Charles G. Williams III for Reinstatement to the Bar of the State of Maine, *Law Court Order*;

17) Petitioner's 2nd Response to Show Cause Order and Reasons Why Reinstatement Should Occur, *Pet.'s 2nd Resp.*;

18) Board of Overseers of the Bar's Response Opposing Reinstatement, *Bd. Opp'n*;

19) Petitioner's Reply Memorandum of Points and Authorities in Support of Reinstatement, *Pet.'s Reply*;

20) Petitioner/Appellant's Brief in Support of Reinstatement – Maine Supreme Judicial Court, *id.* Attach. 1;

21) Brief of Appellee – Board of Overseers of the Bar – Maine Supreme Judicial Court, *id.* Attach. 2;

22) Petitioner/Appellant's Reply Brief in Support of Reinstatement – Maine Supreme Judicial Court, *id.* Attach. 3; and

23) Petitioner's 3rd Response to Show Cause Order, *Pet.'s 3rd Resp.*

**B.    Legal Standards:  Maine Local Rules**

An attorney who has been disbarred by another court is subject to the imposition of the identical discipline in this Court.  D. ME. LOC. R. 83.3(b)(3)(B).  An attorney who had been disbarred for more than three months "may not resume practice until reinstated by an order of this Court."  *Id.* 83.3(g)(1).  To be eligible for admission to the bar of this Court, an attorney must be "an active member in good

standing of the bar of the State of Maine and . . . not currently [be] under any order of disbarment, suspension of any other discipline in any court of record in the United States." *Id.* 83.1(a).

An attorney who has been disbarred may be reinstated upon petition to this Court. *Id.* 83.3(g). To be reinstated, "the petitioner shall have the burden of demonstrating by clear and convincing evidence that petitioner no longer has any incapacity and possesses the moral qualifications, competency and learning in the law required for the admission to the practice of law before this court and that the petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest." *Id.* 83.3(g)(3).

### C. Attorney Admission, *In re Williams,* and the *Selling* Exception

Mr. Williams has not presented this Court with the essential prerequisite for admission to the bar of this Court: he is not an active member of the bar of the state of Maine and he remains under disbarment. *See In re Smith*, 329 Fed. Appx. 805, 807 (10th Cir. 2009); *In re Discipline of Price*, 294 Fed. Appx 743, 744–45 (3rd Cir. 2008); *In re Kandekore*, 460 F.3d 276, 279–80 (2d Cir. 2006); *In re Martin*, 120 F.3d 256, 258–59 (Fed. Cir. 1997); *In re the Matter of Reinstatement of Leaf*, 41 F.3d 281, 284–85 (7th Cir. 1994); *In re Smith*, 100 F. Supp. 2d 412, 416 (N.D. Tex. 2000). Instead, Mr. Williams seeks reinstatement under a narrow window. He contends, citing *Selling*, that the state court proceeding, which denied his motion for reinstatement, violated his rights to due process.

Mr. Williams' own case before the First Circuit Court of Appeals guides the Court's analysis. *See In re Williams*, 398 F.3d 116 (1st Cir. 2005). There, the First Circuit held that "[w]here, as here, action against an attorney is based on the imposition of discipline by a state court, the ultimate decision of the state court as to the type and kind of discipline meted out is 'not conclusively binding' on this court." *Id.* at 118 (quoting *In re Ruffalo*, 390 U.S. 544, 547 (1968)). As the First Circuit made clear, the federal court "is without jurisdiction, in a federal disciplinary proceeding, to disturb the state court's imposition of discipline." *Id.* Further, the state court's substantive findings "ordinarily are entitled to a high degree of respect when this court is asked to impose reciprocal discipline." *Id.* Even though "as a general rule, discipline similar to that imposed in the state court will be imposed in a reciprocal proceeding," exceptions may arise "if the court finds: (i) a deprivation of procedural due process (usually a want of notice or opportunity to be heard), (ii) an infirmity of proof of misconduct such as would 'give rise to a clear conviction on our part that we could not consistently with our duty accept as final the [state court's] ultimate conclusion,' or (iii) the existence of some other serious impediment to acceptance of the state court's conclusion." *Id.* at 119 (quoting *Selling*, 243 U.S. at 51) (brackets in *In re Williams*).

Preliminarily, the Court observes that the Maine procedure complies with the *Selling* directives. The Maine Bar Rules provide for notice: they set forth in detail the requirements for reinstatement and the standards by which the petition would be evaluated. ME. BAR RULE § 7.3(j)(5). The Rules provide for an ample opportunity

to be heard. Mr. Williams' petition reveals that he benefited from the following procedural rights: 1) he participated in a hearing before a panel of the Board of Overseers of the Bar; 2) he was represented by counsel at the hearing; 3) he was allowed to present witnesses and documentary evidence; 4) he received a written recommendation from the panel; 5) he exercised his right to object to the panel findings and recommendations; 6) he obtained review of the panel recommendation by the Board as a whole; 7) he received a *de novo* review of the Board findings and recommendations by a sitting Justice of the Maine Supreme Judicial Court; 8) he received an extensive written decision from that Justice; 9) he appealed Justice Alexander's decision to the Maine Supreme Judicial Court as a whole; and 10) he received a written opinion from the Maine Supreme Judicial Court denying his appeal. This panoply of procedural safeguards seems on its face to fully comply with the notice and opportunity to be heard requirements in *Selling*. Mr. Williams produces no probative evidence that the Maine procedure violated the other two *Selling* concerns: proof of misconduct or some other serious impediment to the acceptance of the state court's conclusion.

### D. Mr. Williams' Equal Protection Challenge

In his verified petition, Mr. Williams claims:

The state decision of the Maine Board of Bar Overseers denying reinstatement constitutes disparate treatment in violation of Petitioner's Equal Protection Rights as a "class of one" where Petitioner has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" under the 14th Amendment to the U.S. Constitution. *Village of Willowbrook v. Olech*, 428 U.S. 562, 564 (2000).

*Pet.* at 24. Although this proposition appears in the Verified Petition, despite Mr. Williams' voluminous filings, the Court could find no further reference to an equal protection argument. The Court concludes that Mr. Williams waived the equal protection argument in his verified petition, and to the extent it is being pressed, the argument has been wholly undeveloped. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20–21 (1st Cir. 2009).

### E. Mr. Williams' Facial Unconstitutionality Challenge

In his multiple filings, Mr. Williams asserts that Maine Bar Rule 7(j)(6) is facially unconstitutional because it does not provide for a hearing. *Pet.'s 3rd Resp.* at 3–5. Mr. Williams points to the following language in the Maine Bar Rules:

> The Court <u>shall</u>, <u>with or without hearing</u>, grant or deny the petition for reinstatement by written order which may include such conditions to be met by a specific date on the petitioner's reinstatement as the Court deems necessary to protect the public interest.

*Id. at 3* (quoting ME. BAR RULE 7.3(j)(6)) (emphasis in *Pet.'s 3rd Resp.*). Emphasizing the phrase "with or without a hearing," Mr. Williams contends that the Rule grants the Court discretion as to whether to hold a hearing, imposes no objective standards upon which the Court must make this discretionary decision, and fails to describe how the Court is to resolve factual disputes. *Pet.'s 3rd Resp.* at 4. Mr. Williams further asserts that the Maine Supreme Judicial Court erred when it refused to adopt a supposedly saving interpretation of its Rule; specifically, Mr. Williams says that the Maine Supreme Judicial Court should have allowed the provisions of Maine summary judgment practice to apply to petitions for reinstatement where there was no hearing. *Id.* at 4–5. Mr. Williams complains

that the Maine Supreme Judicial Court cryptically rejected his contention that Maine Rule of Civil Procedure 56 should apply to such petitions for reinstatement. *Id.* at 5.

Mr. Williams' complaints against the facial unconstitutionality of Maine Bar Rule 7.3(j) are frivolous. Mr. Williams quotes a portion of the Rule badly out of context. Rule 73(j) allows an attorney to apply for reinstatement to the Maine Supreme Judicial Court with a copy to Bar Counsel for the Board of Overseers of the Bar. ME. BAR RULE 7.3(j)(5). Once an attorney applies, Bar Counsel reviews the application and if Bar Counsel agrees that reinstatement is appropriate, the petitioner is so informed and the matter is placed before the Board for consideration at its next available meeting. *Id.*

If Bar Counsel opposes reinstatement, the petitioner is so informed and "the matter shall be immediately referred to the Grievance Commission Chair or Vice Chair for hearing which will ordinarily be by a hearing panel of that Commission." *Id.* The Rule provides for a hearing before the Grievance Commission, delineates the petitioner's burden and the Commission's standards. The Rule requires the Grievance Commission to transmit to the Board its "findings and recommendations" and provide the Board with any record. ME. BAR RULE 7.3(j)(6). If the petitioner does not object, the Board passes the recommendation to the Maine Supreme Judicial Court. *Id.* If the petitioner objects, the Board considers those objections and files its recommendations and findings with the Court along with any record that has been made. *Id.* It is only at this point that the Court is authorized to

review the petition, record, recommendations and findings and then determine "with or without a hearing" whether to grant or deny the petition. *Id.*

Rule 7.3(j) establishes a review process not unlike the report and recommended decision procedure in federal law. *See* 28 U.S.C. § 636(b)(1). A United States District Court Judge is authorized to refer a dispositive matter to a United States Magistrate Judge, who may hold a hearing and issue proposed findings of fact and conclusions of law. *Id.* When the recommendation comes to the district judge, the judge makes "a de novo determination" of the recommended decision based on the record before the magistrate judge. *Id.* The district judge is not required to hold a new hearing, but may consider the record that has been developed before the magistrate judge. *Id.* Even in the context of criminal cases, the United States Supreme Court concluded that due process rights are adequately protected by § 636(b)(1) since the district judge has "the broad discretion to accept, reject, or modify the magistrate's proposed findings." *United States v. Raddatz*, 447 U.S. 667, 680–81 (1980); *Witte v. Justices of New Hampshire Supreme Court*, 831 F.2d 362, 364 (1st Cir. 1987). The same is true here.

As regards Mr. Williams' contention that Rule 7.3(j) contains no standards by which the Maine Supreme Judicial Court determines whether to hold a hearing, the decision as to whether to hold an additional hearing or to rely exclusively on the Board record is necessarily discretionary. The exercise of judicial discretion must depend upon the issues that the objecting party has raised, the listed standards for reinstatement following disbarment, and the adequacy of the Board record on those

issues. In *Raddatz*, the United States Supreme Court rejected a due process challenge to the exercise of discretion in the analogous § 636(b)(1) context:

> We conclude that the due process rights claimed here are adequately protected by § 636(b)(1). While the district court judge alone acts as the ultimate decisionmaker, the statute grants the judge the broad discretion to accept, reject, or modify the magistrate's proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally, we conclude that the statutory scheme includes sufficient procedure to alert the district court whether to exercise its discretion to conduct a hearing and view the witnesses itself.

*Raddatz*, 447 U.S. at 680–81; *Witte*, 831 F.3d at 364 (citing *Raddatz* for the same proposition); *United States v. Cadieux*, 295 F. Supp. 2d 133, 135 n.1 (D. Me. 2004) (same). Here, Justice Alexander reviewed the record that had been developed by the panel and the prior record developed at the original disbarment and concluded that no further hearing was in order. *Pet.'s Resp.* Attach. 5. However, he allowed Mr. Williams to file a brief in support of his position and to file a reply to Bar Counsel's response. *Id.* at 2. The Court concludes that Mr. Williams' due process challenge to Rule 7.3(j) is without merit.

The Court rejects Mr. Williams' claim that Rule 7.3(j) is facially unconstitutional.

### F. Mr. Williams' As-Applied Constitutional Challenge

#### 1. Summary Judgment

Mr. Williams contends that Justice Alexander's use of Maine Bar Rule 7,3(j)(6) "constituted summary judgment" and is therefore unconstitutional. *Pet.'s 2nd Resp.* at 13–21. Mr. Williams made this same point before the Maine Supreme

Judicial Court. *See In re Williams*, 2010 ME 121, ¶ 9 n.3, 8 A.3d 666, 669. In rejecting the argument, the Law Court noted that "no such summary judgment was sought or granted; the court considered Williams's petition based on the testimonial hearing and Williams's own submissions, and completed its own fact-finding." *Id.*

Even though Mr. Williams' argument on this point is lengthy and emphatic, this Court does not know quite what to make of it. First, Mr. Williams challenges Justice Alexander's ruling on the assumption that the provisions of Maine Rule of Civil Procedure 56 apply; that because Bar Counsel failed to controvert his affidavit, its contents must be accepted as true; and that he had no prior notice the Court would question the truth of the statements in the affidavit. *Pet.'s 2nd Resp.* at 23–25. He also complains that Justice Alexander lacked the authority to raise new issues—particularly Mr. Williams' prior disciplinary record—when these issues were "neither discussed nor introduced by the Board or Bar Counsel." *Id.* at 26. However, the Rule 56 procedure does not apply to a petition for reinstatement, and even if it did, could not have applied here since Mr. Williams never filed a motion for summary judgment. Regarding the first point, the Maine Bar Rules expressly provide that Rule 56 does not apply to attorney disciplinary actions. *See* ME. BAR RULE 7.2(b)(2) ("Rules 12(c), 13, 14, 16, 26 through 37, and 56 of the Maine Rules of Civil Procedure shall not apply to attorney discipline actions")[4]; *Bd. of Overseers of the Bar v. Sylvester*, 650 A.2d 702, 704 (Me. 1994) (stating that "[t]he Maine Bar Rules incorporate the Maine Rules of Civil Procedure, with certain exceptions"). Second, as the Law Court pointed out, Mr. Williams never actually filed a motion

---

[4] The Rule provides for certain exceptions not relevant here. ME. BAR RULE 7.2(b)(2) (A)–(C).

for summary judgment and his petition for reinstatement went forward to hearing. In sum, this Court agrees with the Maine Supreme Judicial Court that the summary judgment procedure is entirely inapplicable to Mr. Williams' case. By any view, his argument does not state an as-applied constitutional infirmity.

### 2. Prior Disciplinary Record

Mr. Williams asserts that he was denied due process because he was not placed on notice that the Court would review his prior disciplinary record, which he contends was somehow unexpected and unfair. *Pet.'s 2nd Resp.* at 26–27. In his Order on Mr. Williams' reinstatement petition, Justice Alexander listed the material he reviewed, including the "record developed in BAR-02-05." *Pet.'s Resp.* Attach. 4 at 2–3.

This Court is nonplussed about why Mr. Williams would think his prior disciplinary record would not be considered by the Maine Supreme Judicial Court in addressing his petition for reinstatement. In his petition for reinstatement, Mr. Williams is required to demonstrate by clear and convincing evidence that he possesses "the moral qualifications, competency, and learning in law required for admission to practice law" and that his reinstatement "will not be detrimental to the integrity and standing of the Bar." ME. BAR RULE 7.3(j)(5). The Rule requires that the Court address whether the "petitioner recognizes the wrongfulness and seriousness of the misconduct." ME. BAR RULE 7.3(j)(5)(C). To answer this inquiry, the Court must understand the earlier misconduct, and to take judicial notice of an

earlier developed public record cannot be a violation of the re-applicant's due process rights.

### 3. The state of Georgia and Mr. Williams' Teaching Certificate

Mr. Williams objects to Justice Alexander's reference to the state of Georgia's revocation of his teaching certificate, saying that during the proceedings before the Board of Overseers of the Bar, neither the Board nor Bar Counsel had raised the question of whether his teaching certificate problems constituted "professional misconduct" within the meaning of the Bar Rules. *Pet.'s 2nd Resp.* at 27–28. Mr. Williams raised this same concern before the Maine Supreme Judicial Court and it rejected the argument, observing that "[t]he court considered the fact of that revocation, which Williams did not dispute, as evidence of professional misconduct that occurred since the disbarment." *In re Williams*, 2010 ME 121, ¶ 9 n.3, 8 A.3d at 669.

The background, as described in Justice Alexander's opinion, was that after he was disbarred by the state of Maine on April 7, 2004, a disbarment from which he was then appealing, Mr. Williams applied for a teaching certificate in Georgia in June 2004 and failed to truthfully answer questions about whether he had ever had a professional license revoked and whether there was any investigation or action pending against him. *Alexander Order* at 8–9. Subsequently, Georgia discovered his misrepresentation and the Georgia Professional Standards Committee initiated a proceeding to have his teaching certificate revoked. *Id.* at 9. In April 2007, an administrative law judge found Mr. Williams' concealment of his disbarment

violated the Georgia Code of Ethics for Educators and ordered his teaching certificate revoked. *Id.* at 9–10. Mr. Williams appealed this revocation to the Georgia Supreme Court, which affirmed it. *Id.* at 10.

Mr. Williams could hardly claim that the state of Georgia's revocation of his license to teach was immaterial to his petition for reinstatement of his license to practice law. Instead, he claims that the Board and Bar Counsel did not consider the revocation to be "professional misconduct." *Pet.'s 2nd Resp.* at 27–28. But Mr. Williams himself raised the question of the Georgia suspension before the Board in his Personal Statement, *Pet.* Attach. 2 at 20–27 (*Personal Statement*), and the Board raised the matter at the outset of the reinstatement hearing, *id.* Attach. 1 9:25–11:19 (*Tr. of Board of Overseers of the Bar Hearing*). Furthermore, in its recommended decision, the Board of Overseers of the Bar's Report of Panel B on Petition for Reinstatement mentions the teaching license revocation proceeding in Georgia. *Panel B Report* at 2–3.

Mr. Williams' assertion that neither the Board nor Bar Counsel raised the question of whether his teaching certificate problems constituted "professional misconduct" is incorrect. Rather, the Panel merely concluded that it did not "need to make a determination whether the statements of Mr. Williams in his application for his teaching certificate were 'other professional conduct' within the meaning of the Maine Bar Rule" *Id.* at 9–10. That the Panel raised, but did not decide the issue, did not bind the Justice of the Maine Supreme Judicial Court. This is precisely why the disappointed petitioner is permitted to object and obtain review

by a Justice of the Supreme Court: to obtain judicial review of the underlying process. If the Justice were bound by the prior determinations of the Board, there would be no purpose in judicial review.

### 4. *Paul v. Davis* and the "Stigma Plus" Test

Invoking the Due Process Clause of the Fourteenth Amendment to the Constitution, Mr. Williams says that the Maine Supreme Judicial Court procedure violated his federally protected interest in maintaining his good name and reputation. *Pet.'s 2nd Resp.* at 8–11. He claims the Maine Supreme Judicial Court tarnished his good name and reputation: 1) by making "derogatory statements against Mr. Williams without factual support – e.g., claiming that Mr. Williams is 'delusional,' unfit to practice, engaged in professional misconduct as a teacher, etc. – without any factual basis"; 2) by basing these false statements on "facts and legal issues that neither Mr. Williams, Bar Counsel, or the Board of Overseers ever presented or knew about prior to the state court's decision, despite being asked to disclose them"; 3) that the "state court failed to give Mr. Williams an opportunity to 'clear his name' as required under the due process clause"; and 4) that "these false statements and findings were published and prevent[] Mr. Williams from admission in other jurisdictions." *Id.* at 10.

Mr. Williams cites *Paul v. Davis* for application of the "stigma-plus" test for constitutionally violative defamation. *Paul v. Davis*, however, adds nothing to this case. There, the United States Supreme Court rejected the proposition that "reputation alone, apart from some more tangible interests such as employment, is

either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. at 701. However as the First Circuit explained in *Pendleton v. City of Haverhill*, 156 F.3d 57 (1st Cir. 1998), to benefit from a "stigma-plus" theory, the words spoken by the government official must be "uttered incident to the termination." *Id.* at 63 (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)). Here, there is no suggestion that Justice Alexander's descriptions of Mr. Williams caused his termination from any employment, and the Court rejects Mr. Williams' contention that the Due Process Clause applies to the state of Maine reinstatement proceedings because he suffered a "stigma plus".

At the same time, the Court is curious why Mr. Williams brought *Paul v. Davis* into his reinstatement petition in an apparent effort to establish his right to due process in the state proceeding. Mr. Williams' right to due process in the state reinstatement proceeding was established by the United States Supreme Court in *Selling* in 1917 and is not contested. 243 U.S. at 50–51. *Selling* instructed the federal courts to review the state court proceeding to determine whether it suffered from "want of notice or opportunity to be heard." *Id.*; *In re Williams*, 398 F.3d at 120. If Mr. Williams' point were that the scope of due process rights under *Paul v. Davis* is greater than the scope of his due process rights under *Selling*, he does not say so. It seems that Mr. Williams' *Paul v. Davis* issue is an argument for the sake of argument, exhorting the Court to declare uncontested constitutional rights.

### 5. Res Judicata

Mr. Williams says that Justice Alexander erred in raising and applying against Mr. Williams the issue of res judicata. *Pet.'s 2nd Resp.* at 28–30. He points to Justice Alexander's reference to the resolution of Mr. Williams' appeal of the revocation of his Georgia teaching certificate. *Id.* at 30. Mr. Williams contends that Justice Alexander improperly applied the doctrine of res judicata to the decision of the Georgia courts. *Id.* at 29–30.

Mr. Williams is incorrect. Res judicata has nothing to do with Justice Alexander's use of the results of the Georgia litigation. The Georgia litigation was prominently mentioned in Mr. Williams' own personal statement and at the Panel B hearing, and when Mr. Williams objected to the Board action, it appears that the results of the Georgia litigation were before the Board and the Court and to the extent the opinions were not, Justice Alexander was entitled to take judicial notice of them.[5] Mr. Williams' real objection is that, unlike Panel B, Justice Alexander expressly held against Mr. William, his failure to be entirely candid when he obtained his Georgia teaching certificate. Mr. Williams has no due process right to have evidence interpreted in a fashion that is only favorable or neutral to him.

### 6. Credibility Determinations

Mr. Williams claims that Justice Alexander's failure to make credibility determinations amounted to a denial of due process. *Id.* at 30–34. To the extent

---

[5] Mr. Williams has not provided the Court with any of the Georgia decisions and, as the Court warned him, it is his burden to present the Court with the record of the proceedings below. *Order to File Record* at 1. The record refers to the Georgia litigation but it contains no record of the actual litigation. To the extent Mr. Williams' argument relies on what happened in Georgia and when it happened, his argument fails because he has failed to produce the necessary record. *See In re Williams*, 398 F.3d at 120 n.1 ("The respondent attorney's other claims are forfeit because he has failed to supply this court, despite several requests, with material portions of the record of the state court disciplinary proceeding").

this argument is interwoven, as it appears to be, with Mr. Williams' summary judgment argument, the Court rejects it. To the extent Mr. Williams' argument is that Justice Alexander's twenty-six page Order is so bereft of detail that it amounts to a denial of due process, the Court rejects that contention as well.

### 7.  Mr. Williams' Arrogance

Mr. Williams has repeatedly complained about the Panel's use of the adjective "arrogance" to describe him. *Id.* at 34–39. The following language appears in the Panel B recommendation:

> The Panel also finds, however, that Mr. Williams appears to have retained some of his demonstrated arrogance and the inability to recognize that the ethical rules imposed on attorneys are not rules that can be sidestepped by a clever argument or rhetoric.

*Panel B Report* at 10. However, as Justice Alexander pointed out, it was Mr. Williams himself who first used the term to describe himself. *Alexander Order* at 18–19. In his Personal Statement, the following reference among others appears:

> In keeping with the old adage, "two wrongs don't make a right," neither does the ignorance and bigotry that I fought so vehemently against for the minority and lower class citizens of Maine justify my arrogance to view my actions as an entitlement: *carte blache* (sic) to flout the Code of Professional Responsibility whenever it suits me.

*Personal Statement* at 33–34. When Mr. Williams complained about his own adjective being used against him, Justice Alexander—not unreasonably—pointed out that "[t]he word 'arrogance' was introduced into the proceedings, not by the Grievance Panel, but by Williams, who used it repeatedly in his personal statement and testimony to discuss his failings that led to his disbarment." *Alexander Order* at 18–19.

Mr. Williams continues to complain. However, it is hardly a violation of due process in evaluating a petition for reinstatement to use a litigant's own acknowledgement of one of his less appealing personal attributes, particularly an attribute that can affect the petitioner's suitability to practice law.

### G.    Arbitrary and Capricious Fact-Finding and Grave Reason

In his Second Response, Mr. Williams lists two additional contentions: 1) that the state court determined the underlying facts in an arbitrary and capricious manner and that its findings lacked evidentiary support; and 2) that Mr. Williams had asserted a grave reason that the state court findings should not be considered by this Court. *Pet.'s 2nd Resp.* at 2–3. These issues appear to emanate from *Selling*. *See* 243 U.S. at 51 (stating that in addition to want of notice or opportunity to be heard, a federal court should review the state court judgment to determine whether there was an "infirmity of proof as to facts found to have [been] established" or "some other grave reason" for rejecting the state court's conclusions). However, Mr. Williams never separately developed his position on these issues. Accordingly, the Court concludes that he has waived these issues by failing to present them. Alternatively, to the extent these issues have been subsumed by the other legal issues Mr. Williams has raised, the Court has addressed them within the context of its discussion of those issues.

### H.    *Brinkerhoff-Faris Trust & Savings* and Retroactivity

In his Third Response to the show cause order, Mr. Williams asserts that the Maine Supreme Judicial Court's interpretation of "professional misconduct" violated

his due process right to notice under *Brinkerhoff-Faris*.[6]  *Pet.'s 3rd Resp.* at 5–26. Mr. Williams' *Brinkerhoff-Faris* argument is multi-faceted but the Court has resolved the issue on Mr. Williams' general premise.

To place the argument in context, one of the criteria for reinstatement is that the petitioner must not have "engaged in any other professional misconduct since . . . disbarment." ME. BAR RULE 7.3(j)(5)(D).  In his Order on Reinstatement, Justice Alexander considered Mr. Williams' misconduct in making an untruthful statement on his applications for teacher certification in Georgia to constitute "professional misconduct." *Alexander Order* at 24.  Justice Alexander explained that the misstatement on his teacher certification applications "relates to his professional qualifications to be a lawyer because it attempted to hide the attorney disciplinary action taken against him and was a statement of untruth in an application for certification for a professional position." *Id.*  Mr. Williams asserts that the Maine Supreme Judicial Court previously defined "professional misconduct" as limited to "acts which within the scope of a person's actions <u>directly within</u> the practice of law – whether as a paralegal or as a pro se litigant – that would violate the Maine Bar Rules." *Pet.'s 3rd Resp.* at 7 (emphasis in original).  Mr. Williams then says Justice Alexander's interpretation of "professional misconduct" reaches so far beyond the Law Court's prior interpretations to amount to a denial of the notice requirement of

---

[6] Mr. Williams relies upon *Brinkerhoff-Faris'* statement that "[t]he federal guarantee of due process extends to state action through its judicial as well as through its legislative, executive, or administrative branch of government." *Pet.'s 3rd Resp.* at 5 (citing *Brinkerhoff-Faris*, 281 U.S. at 680)).

the Due Process Clause and a retroactive application of a new rule in violation of *Brinkerhoff-Faris*. *Id.* at 7–10.

The Court rejects this argument. The Maine Supreme Judicial Court has never held that "professional misconduct" is limited to misconduct by attorneys practicing the legal profession. Rather, it is equally applicable to disbarred attorneys who engage in "other professional misconduct" regardless of the profession. In fact, this portion of the Maine's Bar Rule addresses reinstatement for attorneys who have resigned, who have been suspended for more than six months, or who have been disbarred. *See* ME. BAR RULE 7.3(j). The Bar Rules require not only that "[t]he petitioner has not engaged in any other professional misconduct since resignation, suspension or disbarment," but also that "[t]he petitioner has neither engaged nor attempted to engage in the unauthorized practice of law." *Id.* 7.3(j)(5). The concomitant prohibition on unauthorized legal practice and other professional misconduct logically requires that "any other professional misconduct" apply broadly to any profession, not merely the law. Otherwise, the "other professional misconduct" phrase would have little or no effect.[7] In any event, Mr. Williams had no right to anticipate that the Maine Supreme Judicial Court would restrict its interpretation of the phrase "other professional misconduct" and the Law Court's construction of the phrase does not represent forbidden retroactivity under *Brinkerhoff-Faris*.

---

[7] It will be rare that a petitioner for reinstatement would have continued to practice law during the period of suspension or disbarment. Although the possibility exists for a petitioner to hold valid bar memberships in other jurisdictions, which do not impose reciprocal discipline, there is no suggestion that Maine Bar Rule 7.3(j)(5) was intended to apply only to lawyers whose right to practice law in other jurisdictions was not suspended during the period of suspension or disbarment in Maine.

Mr. Williams' other *Brinkerhoff-Faris* arguments are too far-fetched to require discussion.

## I.     Asserted Violations of Local Rule

In his Notice of Objections, Mr. Williams alleges that the District Court has violated its own rules in addressing his petition for reinstatement. *Pet.'s Ob.* at 15–17.  He points to the portion of the Local Rule which requires the Chief Judge to refer the petition for reinstatement to counsel and assign the matter for hearing before one or more of the Judges of this Court.  *Id.* at 17 (citing D. ME. LOC. R. 83.3(g)(3)).  He claims that the failure to make the compulsory referral constitutes a violation of the local rule.

He is wrong.  The Court has the inherent and express authority to relax its own rules "when justice requires."  D. ME. LOC. R. 1(a).  Here, from the face of the petition for reinstatement, it is apparent that Mr. Williams does not possess an essential prerequisite for readmission: membership in the state of Maine bar.  This being the case, the Chief Judge has the authority to screen the petition and to assign it to himself in doing so.  Local Rule 83.3(g)(3) provides for a hearing but does not define the nature of the hearing.  Here, the Court determined that, in view of the nature of the claim—namely a *Selling* issue—it could properly rely on the record generated at the state court proceeding.  This determination is not contrary to the District Court's Local Rules.

## J.     Satisfaction of Reinstatement Requirements

The Court has concluded that Mr. Williams has not established a state violation of his due process rights under *Selling* and thus does not reach the question of whether, if he were reinstated at the state level, the Court would grant reinstatement in this Court. Nevertheless, based on Mr. Williams' performance in this petition for reinstatement, it is important for him to realize that the Court has grave doubts as to his fitness to practice law. Mr. Williams is highly articulate and voluble and his case law citations give his contentions a patina of legitimacy. However, upon analysis, none of his legal arguments carries any persuasive force. For example, here, he has insisted on the application of summary judgment practice to reinstatement proceedings before the Board of Overseers of the Bar despite the express inapplicability of Rule 56 to such proceedings. He raised the question of the Georgia proceedings and then complained when Justice Alexander referred to them. He described himself as arrogant and objected when Justice Alexander accepted his own description. He cited seminal cases, such as *Brinkerhoff-Faris* and *Paul v. Davis*, when neither case has any applicability to his petition. He badly misread a straightforward Court Order as if it required the re-filing of previously filed documents. He attempted to manufacture a controversy with the Clerk of the Maine Supreme Judicial Court and to misuse legal process by seeking to subpoena documents that were already a matter of record in this petition. The Court was required to intervene twice to clarify the obvious and prevent further mischief. The Court could go on but will not.

In support of his own petition for reinstatement, Mr. Williams had every incentive to put forward his very best legal work. Instead, Mr. Williams has presented the Court with a repetitive, contentious, voluminous, rhetorically rich, but substantively empty petition. As this opinion demonstrates, it often takes an inordinate amount of time and effort to determine why a legal argument is frivolous, but the length of this opinion should not comfort Mr. Williams. To the contrary, the Court is more convinced than ever that none of his arguments is meritorious and it is more concerned than ever that his return to the practice of law will invite similar baseless arguments on behalf of members of the public. Based on this performance alone, the Court has serious questions about the advisability of allowing him to return to practice in this District.

Should Mr. Williams elect to file another petition for reinstatement, he should be prepared to demonstrate 1) that he has been reinstated to the bar of the state of Maine; 2) that if he had not, there is a truly legitimate basis for claiming that the state of Maine process failed to accord him essential due process rights under *Selling*; and assuming he crossing those hurdles, 3) that he demonstrates by clear and convincing evidence that he meets each of the qualifications of Local Rule 83.3(j), including that he "possesses the moral qualifications, competency and learning in the law required for admission to practice law before this Court and that petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive to the public interest." D. ME. LOC. R. 83.3(g)(3).

## III.    CONCLUSION

The Court concludes that the proceedings of the Maine Supreme Judicial Court and the Board of Overseers of the Bar gave Charles G. Williams, III constitutionally sufficient notice and an opportunity to be heard under *Selling* and since he has not demonstrated to this Court that he is a member of the bar of the state of Maine, the Court concludes that his petition for reinstatement must be denied. The Court OVERRULES Charles G. Williams, III's objections (Docket # 21) and DENIES Charles G. Williams, III's Verified Petition for Reinstatement (Docket # 1).[8]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2011

---

[8] The Court DISMISSES its Order to Show Cause (Docket # 2) since it has otherwise reached the merits of Mr. Williams' petition for reinstatement.